Good morning, Your Honor. My name is Scott Field. I'm representing the appellant for the City of Huntington Beach. Yes, I read the decision yesterday in Sprint Telephony. In this case, there were actually two separate injunctions. The first one was the one that preliminarily enjoined the city's wireless ordinance, its zoning ordinance. Based upon Sprint Telephony, I think it's indisputable that that injunction was wrongfully entered. I'm sorry, would you speak up? Was wrongfully entered. Well, not wrongfully, but it's now erroneous. Erroneously entered. We have a district judge on you. We have to be careful. Well, at the time, you know, the Sprint Telephony case was good law before the en banc rehearing and before yesterday's ruling. However, now it is contrary to the law. And, in fact, as Justice Schroeder mentioned earlier during an earlier oral argument, I would ask for that exact relief, that that injunction, the February injunction on the wireless ordinance, be immediately set aside. It's clearly, the city's wireless ordinance was, in fact, less restrictive, had less discretion than the ordinance in question in the San Diego County case. Was part of that ruling, I'm getting it confused maybe, that there was discrimination in the treatment of the wireless providers and the preexisting land? Well, that's the second injunction. Okay, all right. And I'm going to get to that in just a second. But the first injunction was the one that enjoined the city's zoning ordinance. So that would have to be vacated based upon yesterday's decision. Exactly. But it would have to be, I would assume, remanded to consider whether there may be some other basis. Well, I really don't, I mean, this is a facial challenge. This case was brought as a facial challenge. What the en banc decision held yesterday was that these kinds of facial challenges to zoning ordinances cannot be upheld. They need to apply for the necessary zoning approvals. They've never done that. They immediately filed suit to challenge the ordinance. And, again, this ordinance was one that we had actually modified to bring it in line with the Metro PCS case, which was the basis for yesterday's ruling. And so we included, for example, the requirement that an antenna be approved if it was in the least intrusive location, which was the basis of the Metro PCS case. Counsel, I don't think the case went as far as you said that it could never be. I think it said the contrary. That is not to say, of course, that a plaintiff could never succeed in a facial challenge. So I don't think it's as far as you said. I agree. The court did not say that there could never be a facial challenge. But they need to show that there is no possibility that the ordinance could be valid. Well, that's why Judge Schroeder was saying it needed to be remanded for the district court to consider it in light of the en banc case and not just for us to take it upon ourselves to set aside the district courts. Well, I would suggest to the contrary. Again, this is a preliminary injunction. We earlier had brought a motion to expedite the proceeding. The system has been installed in part under the preliminary injunction. And I think the time has now come. Well, we'll have to review the record and the language of that decision. We haven't had a chance to give this full study. Could you go to the second part? I certainly will, Your Honor. That's more problematic. Let me mention one other just brief issue that was part of the first injunction. The court also, the district court also enjoined enforcement of the city's requirement that a franchise be obtained to use the public light of way. Now, the court never really explained in its memorandum opinion the basis of that other than relying on the city of Auburn decision that had invalidated a different franchise requirement. The court never reached any of the statewide issues. It expressly stated in the district court's decision that it would not address those. So when we set aside the February order, the February injunction, we should set aside all of it and that would include the franchise requirement. That leads us to the second injunction, and that was the one that enjoined enforcement of the city's undergrounding ordinance, specifically, and I quote, to the extent that it enjoined the ordinance in any manner inconsistent with enforcement against incumbent telecommunication providers or cable television operators. What the district court did was essentially to affirmatively try to level the playing field between incumbent operators and new entrants, and it relied specifically under section 253C of the Telecommunications Act. Now, in Cablevision of Boston, 184F3rd at 104, the circuit held in that case that 253C does not place an obligation to try to affirmatively equalize the cost of entries between incumbent operators and new entrants. Yet that is exactly what happened here in this injunction, because what we're talking about is to make it as graphic as possible. In 1977, the city required that all new utilities be undergrounded. That would be all electrical lines, all new telecommunications lines. That left, grandfathered the lines that were installed before 1977. This operator came in in 2007 and wanted to install utility lines on existing utility poles where there were existing lines, and again, our ordinance was very clear that since 1977, all new lines were to be undergrounded. Now, our ordinance had an exception, and it stated that fiber optic could be over-lashed on existing lines, provided that when those existing lines went away, I'm sorry, that when the existing lines were no longer used, they would be removed, so the fiber optic could be left. And there are pictures in the Administrative Record that show exactly what we're talking about here. This is Excerpt of Record Volume 3, page 348, and you can see in this picture that what we're talking about is large existing cables, and the fiber optic is these very clear sort of pipe cleaner-sized lines that are wrapped around. But, Council, that doesn't change the fact that the landline operators that were there previously are allowed to put in new cabling or fiber optic lines that are not underground, whereas someone who came in who was not there before would have to put those same fiber optics underground, right? That's right, but they would have to do more than that, and what they actually have to do is they have to install a whole other level, or a whole other tier of lines that they would then wrap the fiber optic around. So, in other words, they would be installing something like this, all right, and the cumulative impact of these new facilities would be substantial, and that's what we're trying to avoid. I thought your argument at the district court was not that there was no district treatment, that they were not functionally equivalent. Wasn't there an argument in the – aren't you making a different argument now than you made? No. Let me get to that right now. The argument that I made at the district court that I'm making today is that 253C was the wrong section to rely on, and there's several reasons for that. First, 253C is actually a safe harbor provision. It's an affirmative defense to 253A that provides that if there's a case of effective prohibition of telecommunications services, then you go to 253C to see if, in fact, the city is entitled to the safe harbor. As an affirmative defense, it's not something – it's not a cause of action that NextG could raise to sue the city. It's an affirmative defense the city can raise to defend its own actions. What case says that? First off, in Level 3, the St. Louis case, Level 3 versus the city of St. Louis, which is the case that, in fact, the ombud proceeding yesterday specifically relied upon, held that 253C is an affirmative defense that cannot be brought – that cannot be used as a cause of action. Now, what we argued below is that the proper place to look for this type of claim is 332C7. And 332C7 is the one that prohibits – and let me get it right here in front of me. If that case, St. Louis case, cited in your brief. Level 3? Yes. Yes. Level – 332C at 7Bi and then Roman numeral 1 provides that the regulations shall not unreasonably discriminate among providers of functionally equivalent services. So, yes, that's exactly what we argued below. And that's what the district court disregarded, instead going under this idea of some sort of absolute neutrality, which has been applied in a fashion as to affirmatively level the playing field between incumbents and new entrants. Can you point me to the language in Level 3 that says that 253A is an affirmative defense and cannot be used to state a cause of action? Sure. I'm looking at Level 3, 477F3 at 528, page 532. Page 532, okay. And let's see here. Well, it's under Roman numeral 2, under discussion, subheading A, the relationship. What page? This is – it really begins at page 532. Okay. What's the precise language that says that 253A is an affirmative defense that cannot be used as a cause of action? Well, it would be the second paragraph of subsection A. We write on this point to make it clear that only after the party seeking preemption sustains its burden of showing that a local municipality has violated Section 253A by formally or effectively prohibiting entry into the telecommunications market does the burden of proving that the regulation comes within the safe harbor in Section 253C fall on the defendant municipality. But that doesn't say that 253A is only an affirmative defense. No, but it says that 253C is an affirmative defense. But I thought the allegation was made under 253A. No. No. The district court relied on 253C. And let's see here. That would be – I thought the district court found that the city – that you waived the 253C argument. No. The district court found that we waived the 253C argument as to the wireless – as to the wireless ordinance under the first injunction. There was no dispute about – about any waiver in the second injunction. And that is primarily because, in fact, it was Next-G that was asserting 253C as a sword. The city wasn't asserting it as a shield. The city was simply pointing out that, in fact, 332C-7 was the proper operative provision. Got it. And that's the one that says that it doesn't talk about neutral and non-discriminatory like 253C does. It talks about prohibiting unreasonable and discriminatory regulations. I thought the district court talked about 253A. Not in the – no, in the first injunction, they relied – the district court relied on 253A. In the second injunction, which is the one we're talking about – The second record? The second injunction? The second injunction begins at Excerpt of Record 305, right? That's the Memorandum of Decision. And the actual injunction is at 319. Okay. Okay. You've more than used your time. We will give you a little bit. Okay. You're way over. But we'll give you a minute to respond. We've helped you use it. So. Do you want to draw to a conclusion? I'll try to draw to a conclusion. All right. Again, I think I've sort of exhausted the first topic. Yeah. Which is that 253C is, in fact, an affirmative offense, and the district court never should have gotten to it. Did you make that argument that 253C is an affirmative offense, and the district court could not use that as a basis for the injunction? Did you make that argument before the district court? Would I? I think that's a yes or no. I am not sure if I specifically raised it in that fashion. I know what we argued vociferously is that the controlling section was 332C7. Okay. Thank you. You have used your time. We will give you a couple minutes. Okay. I will be very quick. The point is that relying on 253C and disregarding 332C7 is exactly the wrong thing to do, and that's what the en banc court held yesterday. In a somewhat similar situation, they explained that the two sections had to be harmonized, and that the more specific, 332C7, is the controlling section. What do you want us to do? What I want, what I think should be done here is, again, this injunction should be reversed. All right? Clearly. Which one? The second injunction as well. You want both injunctions reversed. I want both injunctions reversed. We know. Okay. Now, is it an option to send the second injunction back to the district court to be reconsidered in light of 332C7? I suppose. But I will note that the district court was very clear in suggesting that this case could never work under C7. Okay. I think we understand your position. All right. We do need to hear from the other side. Okay. Thank you. Thank you. Thank you, Your Honors. May it please the Court, my name is Scott Thompson. I represent NextG Networks in this case. Let me first address the injunction regarding the wireless. And I think that it's incorrect that that needs to be reversed, even in light of Sprint, which I have read. And let me tell you why. There are several reasons. First of all, this, despite what counsel says, if you look at our complaint, it's quite clear this is not a purely facial challenge. There were a number of facts that were before the district court in making her decision. For example, NextG had first approached the city in May of 2007 and met with the moratorium in which the city said, well, you can't do anything right now at all until we adopt a new ordinance. So there was a six-month delay before the city even adopted an ordinance. And there were some meetings with the city. So there were some factual background here. Number two, as was pointed out, there was a California Public Utility Code section 7901 state court claim as well. Now, the district court, which, just briefly, that grants telephone companies a franchise to occupy the public right-of-way, which is what NextG seeks to do, occupy the public right-of-way. This is not a cell phone tower case. The court said that she didn't need to reach 7901 issue because she had reached and found a likelihood of success in our favor on the federal issue. I think that, at a minimum, she needs to be given, Judge Collins needs to be given an opportunity now, if the court believes that Sprint materially affects her decision, to rule on whether we have a likelihood of success on the merits under 7901. And I think that we do. I realize that we haven't briefed this, but, again, briefly, 7901 is a state statute that gives telephone corporations a franchise to use public rights-of-way. NextG, as the district court recognized, as the California PUC has recognized, is a telephone corporation. It seeks to deploy 19 miles of fiber in the city, along with 15 antennas, in this case. So there is a real showing here, at a minimum, that there are substantial questions of whether we have a likelihood of success under section 7901. I would suggest to you that we, in fact, can prove that we have a likelihood of success. Given the strong irreparable harm showing that we've established, coupled with the substantial questions, that is enough to support the injunction in this case. Counsel, on the irreparable harm argument, hasn't that contract date come and gone now? It has, and as a result, we are being irreparably harmed now. NextG is constantly having to communicate with its client, with its customer, about what it's doing to try to get that network built as promptly as possible, undertaking this litigation, enforcing its rights as much as possible. The fact that we're now being irreparably harmed doesn't undermine the support of the injunction. It emphasizes the need for it to continue. In fact, even with the injunction, NextG has not been able to deploy fully because the city has refused to issue all permits under the encroachment permit process, which is an important something to think about. The encroachment permit process is the process by which the city manages the right-of-way. The city is not without some regulatory oversight of NextG's deployment in this case. We're not proposing and wouldn't suppose to say that we should just be able to build willy-nilly. There are encroachment permits, right-of-way permits, that are standard operating procedure, and we're going through that process with the city. And through that process, the city has protected its interests, I assure you. So I think that those are strong reasons why, at worst, there should be a remand to Judge Collins for her to consider the 7901 issue. Under no circumstances, though, I think there is sufficient showing that the injunction should be immediately eliminated. On the undergrounding injunction, there are a number of things that I think need to be cleared up. First of all, the court did not miss, as the counsel suggests, finding that there had been a 253A violation. In this case, we've got undisputed facts. Again, not a facial case. Undisputed facts that building underground will cost NXG about 800% more than it would aerially. So we're talking about the difference between $600,000 to build and $5.25 million. That puts NXG at a material disadvantage in competing with Verizon and Time Warner, the incumbents in the city, who the city has gone out of its way to allow to build aerially. The FCC and other circuit courts have held that you can establish a Section 253A violation if the regulations materially inhibit the ability of the new entrant to compete in a fair and balanced regulatory environment. And that's in the Second Circuit held that in the White Plains case that we cited in our brief. The FCC held that in the California Payphone case, which was cited favorably in the spread decision yesterday. Did your complaint include a cause of action under 253A? Absolutely. And where in the district court's order was 253A discussed? That was in the first decision. Remember that the second injunction was a carryover from the first. At the end of the first decision in the oral argument, the court realized that there were additional facts regarding the discrete issue of undergrounding and whether it was competitively neutral in the city's exercise of that defense. She, in her original order, had gone through the full 253A analysis, and so had the parties file supplemental briefs to then address this discrete issue that came up during the oral argument about whether there was support for finding that the undergrounding was competitively neutral. Initially, at oral argument, she suggested that she might find that it was. And when she heard of additional facts, had supplemental briefing. So the A violation, her analysis under 253A is in the opening brief. I'm sorry, the opening order, the first, the February 7th order. There can be very little question that this is not competitively neutral. Congress could not possibly have intended for cities to allow the incumbents the luxury of doing business as usual, building aerially, but imposing on new entrants who Congress wanted to enter the business to have to incur a cost of this measure that puts them at a competitive disadvantage, a material cost disadvantage. A couple of specific points. Council argues that Section 332C7 should somehow govern this issue, but yet Section 332C7 involves wireless facilities. So as a functional matter, it doesn't apply to the deployment of fiber. Number two, critically, even if it did apply, what the city refuses to recognize is there is evidence on the record, undisputed, that NextG actually competes with Verizon and Time Warner. Mr. Doherty, NextG's sales executive, testified that, in fact, NextG had lost business in a direct bid with Time Warner earlier in 2007 in the Los Angeles area. So they are functionally equivalent, even if that section did apply, which it doesn't. Regarding the Cablevision-Boston case, this is very different from Cablevision-Boston. In the Cablevision case, Cablevision asked the court to require the city to adopt regulations. The First Circuit made clear that if the city did adopt regulations, for example, regulations regarding requirements of undergrounding like the city has done here, those would be required to be competitively neutral and nondiscriminatory. Here, the city has adopted regulations. They say all new entrants have to go underground. And as the court found, the city went out of its way in 2004 to open the door for Verizon to deploy its fiber aerially. So clearly, Cablevision-Boston is not contrary to the court's finding. If anything, it supports it. Similarly, the FCC's decisions and the Texas preemption order that we cited, these are non-compensation issues where the courts and the FCC have found that imposing burdensome requirements like this on new entrants is completely contrary to the language and intent of the Telecommunications Act. If there are no other questions, I'll actually rest on what we have there. Thank you. Thank you. I'll try to be very, very quick. Just to be clear on the record, excerpt of record at page 324, paragraph 6, is the portion of the district court's order where it's specifically relied on. 253C is the basis for. I'm sorry. The page is what again? It's excerpt of record 324. It's actually page 5 of the second preliminary injunction, the one that was filed on March 7th, and it's paragraph 6. A couple very quick quotes. In Metro PCS 400F3 at 727, this court held that 332 gives cities the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently even if they are functionally equivalent. The Cablevision of Boston, the court explained that it is not discrimination for the city to have different policies for constructing of conduits that are new and for the conversion of uses that are existing, and that's what we're talking about here. Now, a couple things that were raised during the opposing points of comments. First off, this was a facial challenge. Yes, they offered facts about what they thought might happen if they applied for permits as part of the preliminary injunction, but the bottom line is they never applied for anything. It's a facial challenge. Second, 7901, the Public Utilities Code, the suggestion that now the district court should go back and try to interpret California state law. This court's already gone down that road. In the Palos Verdes case, you certified a question to the California Supreme Court. The California Supreme Court declined to answer that question. The last time you tried to interpret 7901 was in the La Cunada Flintridge case, and you depublished that case rather than try to interpret these provisions of state law. That would be a mistake, as the district court recognized. Now is not the time. Lastly, NEXT-G is not a competitor of Verizon or Time Warner in the system they are proposing, and they have been building in Huntington Beach. The evidence they offered was that in some other situations, they would compete using fiber optic as a means for broadband communications. That's not what they're building here. What Time Warner and Verizon do in Huntington Beach is they use these existing lines to reach individual homes. That's not the case. We understand. We're talking here about a wireless system. Thank you. You have used your time. I'm sorry? You have more than used your time. Thank you. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. All rise. This court is adjourned.
judges: Schroeder, Rawlinson, Sandoval